**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-01584

COURTNEY BOUSQUET, individually
 and on behalf of all others similarly situated,

   *Plaintiff*,

v.

FLEET FINANCIAL, INC., a Colorado corporation,
 d/b/a ILENDINGDIRECT,

   *Defendant*.

---

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Courtney Bousquet, individually and on behalf of all others similarly situated, brings this class action complaint against Fleet Financial, Inc. (d/b/a iLendingDirect) ("Defendant" or "iLendingDIRECT") to stop Defendant's practice of making unsolicited calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. As alleged below, iLendingDIRECT violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, through their unauthorized contact of consumers on their cellular telephones. Specifically, iLendingDIRECT has violated the TCPA by contacting individuals on their cellular telephones through an artificial or

prerecorded voice, and/or through the use of an automatic telephone dialing system, without first obtaining the individuals' express written consent, invading their right to privacy. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, inter alia, statutory damages and injunctive relief for iLendingDIRECT's violations.

Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.   NATURE OF THE ACTION

1.   Defendant Fleet Financial, Inc. (d/b/a iLendingDirect) is a national finance and insurance marketing firm that specializes in auto refinancing.

2.   In an effort for iLendingDIRECT to generate business, they called thousands (and potentially hundreds of thousands) of consumers nationwide on their cellphones without prior express consent and using an automated dialing system, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

3.   The TCPA was enacted to protect consumers from unsolicited commercial telephone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiff, nor the other members of the putative Classes, ever provided express consent to receive such telemarketing calls.  Congress enacted the TCPA to deal with an increasingly common nuisance-telemarketing and to control residential telemarketing practices.  Indeed, the TCPA's legislative history shows Congress's concern with the invasion of privacy, occupation of consumers' phones, and wasted time

caused by unwanted calls, and the explosion of these calls due to the introduction of autodialers. iLendingDIRECT's entire business model feeds of these nuisance-telemarketing practices and is fact premised upon them.

4. By making the phone calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.  Plaintiff and class members suffered an invasion of a legally protected interest that is concrete, particularized, and actual—their privacy was invaded and their solitude disturbed due to the calls from iLendingDIRECT.  Plaintiff's and class members' cell phones were intruded upon and their capacity occupied without permission.  Moreover, Plaintiff and class members necessarily suffered a loss of battery life in their cellular phones that directly resulted from the calls from iLendingDIRECT, and the electricity used to charge said battery would not have been used in the absence of the calls.  Additionally, Plaintiff's and class members' time was wasted due to the unwanted calls and a risk of personal injury was created due to the interruption and distraction caused by iLendingDIRECT's calls.  Plaintiff and class members suffered exactly the harm from which Congress sought to protect consumers by enacting the TCPA.

5. Moreover, each recipient of a call from iLendingDIRECT, including Plaintiff and class members, were harmed by being the direct subject of a swindle devised to make the Plaintiff and class members think they were going to be saving money by re-financing their vehicle loans and obtaining a lower monthly payment.  While it may be true

that a lower payment may be available through iLendingDIRECT, the payment terms are inevitably extended for years, with huge undisclosed "service fees" fees equaling thousands and thousands of dollars added to the principal balance.  Moreover, iLendingDIRECT attempts to have consumers electronically sign loan documents without reviewing the terms such that the refinancing fees and extended terms are discovered, rushing the consumers to sign without considering the terms.

6. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit and now seek an injunction requiring Defendant to cease all unsolicited calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## II.   PARTIES

7. Plaintiff Courtney Bousquet is a natural person and citizen of the State of Colorado.  She is, and all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

8. Defendant Fleet Financial, Inc. (d/b/a iLendingDIRECT) is a corporation organized and existing under the laws of the State of Colorado with its principal place of business located at 7257 South Tucson Way, Englewood, Colorado 80112 ("ILendingDIRECT"). iLendingDIRECT does business throughout the United States, the State of Colorado, and in this District.  iLendingDIRECT is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

## III.   JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

10. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant resides in this District and transacts significant amounts of business within this District.

## IV.   COMMON FACTUAL ALLEGATIONS

11. Defendant made more than several telephone calls to Plaintiff's, and the members of the Classes', cellular telephone(s) without consent for the express purpose of obtaining customers to finance automobiles through them and/or to finance their leases that were coming to an end.

12. Defendant made these calls using at least the outbound phone number (844) 805-0902, among others.

13. To get new customers, Defendant iLendingDIRECT repeatedly called Class Members' telephones in an attempt to convince them to refinance their vehicle loans through iLendingDIRECT and/or to give them other financial options for their leased automobiles that are about to end.

14. Defendant made these calls, or directed them to be made, using an automatic telephone dialing system, often known as a "predicative dialer," to calls numerous telephone numbers simultaneously and without the calls being manually dialed.  When Plaintiff and Class Members picked up the telephone call that was placed to them using the automatic telephone dialing system, there was the telltale pause or

"dead air" prior to an actual operator announcing themselves to the Plaintiff and Class Members. Moreover, multiple calls indicate of the use of an autodialer by Defendant. Finally, Defendant did and does advertise certain jobs on its website and others that seek to hire customer service representatives that "[a]dvise[] present or prospective customers by . . . operating telephone equipment, automatic dialing systems, and other telecommunications technologies." *See, e.g.*, https://www.appone.com/maininforeq.asp?Ad=486170&R_ID=1314869&Refer=&B_ID=91

15. Plaintiff nor the other members of the putative Class ever consented to have Defendant make telemarketing calls to them.

## V.   FACTS SPECIFIC TO PLAINTIFF BOUSQUET

16. iLendingDIRECT made calls to Plaintiff Bousquet's cellular telephone (telephone number (303) 718-XXXX) up to and including the week of July 4, 2016. At least one of the incoming calls was placed from telephone number (844) 805-0902.

17. Upon answering certain of the calls, there was a pause with no response from a person, followed by a hang up. Upon answering the last of the calls, Bousquet heard several seconds of "dead air" while iLendingDIRECT's dialer system connected the call to a live operator. The system iLendingDIRECT used to call Bousquet had a timing function that enabled iLendingDIRECT to "predict" when a live operator would be available to take the call. In other words, iLendingDIRECT programmed its dialing system to call consumers at a preset rate to ensure that, when the consumers picked up the call, a live operator would be available. The dead air that Bousquet experienced was the system's waiting for a live operator to actually become available to take her call.

iLendingDIRECT's "predictive-dialer" system called numbers (including Bousquet's) that had been entered into a database accessible by the system; alternatively, the system simply called numbers (including Bousquet's) in random sequences of ten digits, or in consecutive sequences of ten digits (*e.g.*, (111) 111–1111, (111) 111–1112, *etc.*).  In any event, the use of the automated dialing system to call Bousquet's cellphone is prohibited by the TCPA.

18. The purpose of the above-alleged calls that Bousquet received was to promote the sale of a loan to refinance Bousquet's vehicle.  During one of the calls, Bousquet spoke to an iLendingDIRECT personnel, who identified herself as a "loan consultant" and who forwarded Bousquet loan documents that had refinancing terms, which included longer payment term, an extended warranty charge, and a "service charge" of thousands of dollars that was never mentioned.  iLendingDIRECT's sales pitch to Bousquet was highly aggressive.

19. Bousquet had never given any signed authorization to anyone expressly permitting iLendingDIRECT—or anyone acting on iLendingDIRECT's behalf—to use her cellular-telephone number for telemarketing or advertising purposes.  She also was not looking to refinance her vehicle nor had she contacted anybody about refinancing her vehicle at the time she was solicited by iLendingDIRECT.

20. Bousquet's cellular-telephone number is linked to a subscription plan under which she is charged each month for cellular-telephone and data services.  She is also required to recharge her telephone, and pay for the electricity required to do so, each time the battery is depleted.  The calls to Bousquet wasted valuable time during which she

would otherwise have been productive. The calls also caused aggravation and nuisance resulting from the unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls. She in fact suffered an invasion of her privacy, and her solitude was disturbed due to the calls from iLendingDIRECT. Bousquet's cellphone was intruded upon and its capacity occupied without permission from her, and if such permission had been sought, she would not have granted it. Moreover, Bousquet suffered a loss of battery life in her cellular phone that directly resulted from the calls from iLendingDIRECT, and the electricity used to charge said battery would not have been used in the absence of the calls. Additionally, Bousquet's time was wasted due to the unwanted calls and a risk of personal injury was created due to the interruption and distraction caused by iLendingDIRECT's calls. In fact, Bousquet suffered exactly the harm from which Congress sought to protect consumers by enacting the TCPA.

## VI.   CLASS ALLEGATIONS

21.   Plaintiff Courtney Bousquet brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class of similarly situated individuals defined as follows:

> **Cell Phone (No Consent) Class**: All individuals in the United States (1) to whom Defendant Fleet Financial, Inc., d/b/a iLendingDIRECT, made a telephone call; (2) on his or her cellular telephone number; (3) promoting Defendant iLendingDIRECT's loans; and (4) who never consented to receive marketing telephone calls from Defendant Fleet Financial, Inc., d/b/a iLendingDIRECT

(the "Class," and each member of the Class, including Bousquet, a "Class Member"). The following persons are excluded from the Class: (1) any Judge or Magistrate presiding

over this action and members of their families, (2) iLendingDIRECT, iLendingDIRECT's subsidiaries, parents, successors, predecessors, and any entity in which iLendingDIRECT or its parents have a controlling interest and their current or former employees, officers and directors, (3) persons who properly execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, (5) the legal representatives, successors, or assigns of any such excluded persons, and (6) Plaintiff's counsel and Defendant's counsel.  Plaintiff reserves the right to amend or modify the proposed Class, or to propose additional subclasses or limitations to particular issues, in response to facts later ascertained.

22. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. iLendingDIRECT has made telephone calls to thousands, if not hundreds of thousands, of consumers who fall into the definitions of the Class—well over the 40 required for numerosity. Members of the Class can be identified through Defendant's records.

23. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls to their cellphones without prior written consent.

24. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and

experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

25. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common and predominant questions for the Class include, but are not necessarily limited to, the following:

(a) Whether Defendant's made telephone calls to the Cell Phone (No Consent) Class;

(b) Whether the predictive-dialer equipment used to place calls constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

(c) Whether Defendant's conduct violated the TCPA;

(d) Whether the outright failure to secure any prior express written consent constitutes willful and knowing behavior within the meaning of the TCPA and its regulations;

(e) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

26. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small compared to the burden and expense of individual prosecution of the

complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### VII.   FIRST CAUSE OF ACTION – Violation of 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Class)

27.   Plaintiff Courtney Bousquet incorporates by reference the foregoing allegations as if fully set forth herein.

28.   Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff Courtney Bousquet and other members of the Class without their prior express consent to receive such calls.

29.   Defendant made the telephone calls, or directed them to be made, using equipment that had the capacity to store or produce lists of telephone numbers, equipment that has the capacity to generate and store numbers randomly or sequentially, and the capacity to dial such numbers.

30.   Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiff Courtney Bousquet and other members of the Class simultaneously and without human intervention.

31. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiff Courtney Bousquet and the Class members' cellular telephones without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

32. As a result of Defendant's unlawful conduct, Plaintiff Courtney Bousquet and the members of the Class suffered actual damages as detailed in at least Paragraphs 3-5, and 20 of this Complaint.

33. Accordingly, and under section 227(b)(3)(B), Plaintiff Courtney Bousquet and the members of the Class are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

34. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Courtney Bousquet and the other members of the Class.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Courtney Bousquet, individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above pursuant to Fed. R. Civ. P. 23, appointing Plaintiff Courtney Bousquet as representative of the Classes, and appointing their counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## IX.     JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted:

<u>Date</u>:  June 29, 2017

/s/ *James F. McDonough, III*
JAMES F. MCDONOUGH, III
TRAVIS LYNCH
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332
jmcdonough@hgdlawfirm.com
tlynch@hgdlawfirm.com

W. LEWIS GARRISON, JR. - *Admission to come*
CHRISTOPHER B. HOOD  - *Admission to come*
MARK EKONAN  - *Admission to come*
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
Tel: 205-326-3336
Fax: 205-326-3332
lewis@hgdlawfirm.com
chood@hgdlawfirm.com
mark@hgdlawfirm.com

*Attorneys for Courtney Bousquet*